449 So.2d 725 (1984)
Joseph George LAFLEUR, Jr., Plaintiff-Appellee,
v.
HARTFORD INSURANCE COMPANY, Defendant-Appellant.
No. 83-559.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1984.
*726 David K. Balfour and Charles J. Foret, Lafayette, for defendant-appellant.
Fusilier & Chapman, Alex D. Chapman, Jr., Ville Platte, for defendant-appellee.
Before DOMENGEAUX, STOKER and DOUCET, JJ.
STOKER, Judge.
Defendant, Hartford Insurance Company, appeals a judgment of the trial court awarding worker's compensation benefits to plaintiff, Joseph George Lafleur, Jr., for permanent partial disability and awarding penalties and attorney's fees in the amount of $4,500.00. Hartford is the worker's compensation insurer for Mr. Lafleur's former employer, Tide Products, Inc. (Tide). Plaintiff neither appeals nor answers the appeal. For reasons set out below, we affirm the trial court's findings as to disability, penalties and attorney's fees, but reverse the judgment and remand the matter for a redetermination of benefits due.

FACTS
Before going to work for Tide as a sales trainee in January of 1979, Mr. Lafleur did carpentry work. As a carpenter he sustained an injury to his right knee in 1978. This 1978 injury is not involved in this case, but it motivated Mr. Lafleur to seek a job involving less manual labor. This led to his employment by Tide. Nevertheless, as established at trial, the job at Tide did involve strenuous physical labor. Tide is a distributor of agricultural chemicals, fertilizer and seed. Its operations involve the loading and unloading of heavy bags and drums of these products by the use of large equipment and manual labor. Although Mr. Lafleur had the duty to supervise such operations, he was regularly required to actually do the work himself.
This claim arises out of an accidental injury Mr. Lafleur sustained in July of 1981. Mr. Lafleur was injured at Tide on July 30, 1980, when a warehouse door fell on him crushing his knees against the ground. He was first seen by Dr. James McDaniel, an orthopedic surgeon, on July 31, and was thereafter treated by Dr. McDaniel. After conservative treatment with painkillers and exercise was unsuccessful in resolving the problem, Mr. Lafleur underwent an arthroscopy and an arthrotomy, procedures in which loose debris is removed from the knee. On this same date, December 2, 1980, Dr. McDaniel also performed a procedure in which the kneecap is moved forward and screwed into place to prevent constant rubbing on injured parts of the knee.
In January of 1981, Mr. Lafleur returned to light duty work and in May, the screws were removed from his knee. He continued to work, eventually performing the same work he performed before his injury, but he was never released to do so by Dr. McDaniel. In July of 1981, Mr. Lafleur again injured his knee when climbing down from a tractor he had to move. A second arthroscopy was performed on August 18, 1981, in which more debris was removed from the knee. He returned to work for a few weeks in November, but subsequently resigned.
Mr. Lafleur and his wife began a business called La Pecanierre Sausage Kitchen in December of 1981. Mr. Lafleur anticipated that this would be less strenuous for him because he could set his own hours and duties. Upon Mr. Lafleur's resignation from Tide, Hartford stopped compensation payments and this suit followed.
At trial, the parties stipulated that Mr. Lafleur was injured on the job, that he was entitled to some compensation, that Hartford was the worker's compensation insurer, and that the maximum compensation rate for Mr. Lafleur is $148.00. (Tr. 237 and 238) (We accept this stipulation as to the maximum compensation rate for the purpose of this case without passing on its correctness.) The parties further stipulated that Mr. Lafleur was paid either in compensation or salary from the time he *727 was injured until December 1, 1981 (Tr. 285 and 286), and that he received no other payment until the day of trial at which time Hartford tendered to him a check for $396.00 representing nine weeks of compensation payments for a schedule loss at a rate of $44.00 per week, the minimum amount. The period represented by the check was from November 3, 1982 to January 4, 1983, the day of trial.
Hartford raises three issues for review in its appeal:
1. Whether the trial judge correctly found that Mr. Lafleur suffered a permanent, partial disability rather than a schedule loss;
2. Whether the trial judge erred in awarding penalties and attorney's fees; and,
3. Whether the amount of benefits was properly computed.

EXTENT OF DISABILITY
The trial court found that Mr. Lafleur was permanently and partially disabled under LSA-R.S. 23:1221(3) as that provision of law read prior to July 1, 1983, in that he could no longer "perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description..." On appeal, Hartford contends that Mr. Lafleur suffered a schedule loss under LSA-R.S. 23:1221(4)(h) and (o), in that he only suffered a partial loss of the use of his leg and can still perform his previous duties.
The medical evidence introduced at trial consisted of the depositions of Dr. McDaniel, the treating physician, and Dr. William Hagemann, an orthopedic surgeon who examined Mr. Lafleur once for purposes of evaluation at his counsel's request. Both specialists assigned a permanent disability rating to the right leg, twenty percent by Dr. McDaniel and twenty to twenty-five percent by Dr. Hageman. Both doctors also gave restrictions on Mr. Lafleur's future activities which include repetitive squatting and bending or what is described by Dr. McDaniel as "fast loading type activities." Both doctors also indicated that Mr. Lafleur's climbing activities would have to be limited.
Hartford argues on appeal that Mr. Lafleur's duties at Tide did not include those activities restricted by the doctors, and that his present duties with his sausage kitchen are more strenuous than those he had at Tide. We disagree. Testimony of Mr. Lafleur, together with testimony of a former co-worker at Tide, and his boss at Tide convince us that Mr. Lafleur was required to perform a substantial amount of physical labor at Tide including loading and unloading trucks, operating large equipment, and making deliveries of goods which he had to unload. The most strenuous work Mr. Lafleur does for the sausage kitchen is to deliver boxes containing five five-pound packages of sausage. Such activity is clearly easier than handling sixty-pound bags of feed and fertilizer and fifty-five gallon drums.
Although Mr. Lafleur was in a supervisory position at Tide, it is clear that he was required to perform physical tasks as a part of his job. Even though Tide may have been willing to retain Mr. Lafleur without requiring him to perform these tasks, his impairment still exists and he is entitled to compensation for a permanent and partial disability. See Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981) and Stracener v. United States Fidelity & Guaranty Company, 420 So.2d 1101 (La. 1982).
The trial court's finding as to disability is correct.

PENALTIES AND ATTORNEY'S FEES
The trial court found that Hartford was arbitrary and capricious in refusing benefits to Mr. Lafleur after December 1, 1981, and awarded penalties of twelve percent on all overdue payments and attorney's fees in the amount of $4,500.00. Hartford argues on appeal that this award was in error. We agree with the findings of the trial judge.
As previously mentioned, the parties stipulated at trial that Mr. Lafleur suffered a *728 job-related injury and was at least entitled to benefits for a schedule loss. On appeal, Hartford admits in brief that Mr. Lafleur is entitled to benefits; yet, none were paid prior to the day of trial at which time a check for $396.00 was given to Mr. Lafleur. In brief, Hartford alludes to an offer made to Mr. Lafleur in the amount of $6,510.16 for schedule loss benefits, but no evidence of such an offer appears in the record. Therefore, any such offer may not be considered in this matter.
Under the circumstances of this case it is clear that Hartford was not entitled to stop all compensation payments upon Mr. Lafleur's resignation from Tide. Although the question of partial disability was unsettled, Mr. Lafleur was clearly entitled to benefits for a schedule loss. Hartford's failure to pay at least those benefits was arbitrary and capricious and Mr. Lafleur is entitled to penalties and attorney's fees. See Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977).

AMOUNT OF BENEFITS
In accordance with our previous findings, Mr. Lafleur is entitled to 450 weeks of compensation for permanent partial disability at the rate of $148.00 per week which was the rate stipulated to by the parties. Hartford argues on appeal that the amount of benefits was improperly determined. Apparently, the judgment was based on a post-trial memorandum prepared by counsel for Mr. Lafleur which does not appear in the record before us.
Specifically, Hartford claims that the credit it received for Mr. Lafleur's earnings from the sausage kitchen should not have been reduced by half based on Mrs. Lafleur's half ownership of the business. Alternatively, Hartford asserts that if half of the profits from the business is considered Mrs. Lafleur's, then Mr. Lafleur's wages from Tide should be reduced by half in determining benefits since they are considered to be community property.
We are not persuaded by this contention. It is apparent that both Mr. Lafleur and Mrs. Lafleur work in the business and make equal contributions in the conduct of the business. If Mrs. Lafleur did not work in the business, Mr. Lafleur would either have to employ someone to do her share of the work or take in a business partner other than Mrs. Lafleur. In such events, the net profits of the business would either be reduced by the wage or salary of an employee or be split between Mr. Lafleur and his business partner. For the purpose of the determination of the worker's compensation under consideration we think the reduction for Mr. Lafleur's earnings from the sausage kitchen was correctly set at one-half of the net earnings of the business.
Hartford also asserts that benefits received by Mr. Lafleur from the sausage kitchen such as van expenses and group insurance should be considered in determining his wages. The written summaries showing income and expenses of the sausage kitchen show expenditure for group insurance; however, the record is not specific and does not indicate those persons covered by this payment for group insurance or the amounts of any premiums attributable to any particular persons. Plaintiff rather than defendant offered evidence of net profits and defendant's counsel objected to the evidence on the ground of relevancy only. Evidence as to net profits redounded to defendant's benefit, not plaintiff's. If it is appropriate to treat any payments for group insurance which may have been made on behalf of Mr. Lafleur as wages, we feel that defendant's counsel should have explored this point at the time of trial so as to bring out the necessary facts.
In view of Mr. Lafleur's testimony regarding his use of his van in delivery of goods for the sausage kitchen, the payment of the van expenses by the partnership cannot be considered compensation. The payment is merely reimbursement for expenses necessary to the job. See Price v. Houston Fire & Casualty Insurance Co., 155 So.2d 213 (La.App. 3rd Cir.1963). Any other benefits which may have been received *729 by Mr. Lafleur have not been shown to be a factor in determining his wages from the business as was the case in Morgan v. Equitable General Insurance Company, 383 So.2d 1067 (La.App. 3rd Cir. 1980) and need not be considered as wages.

CONCLUSION
Although we find no manifest error in the trial court's basic determinations, which we affirm, we nevertheless deem a remand necessary in order to permit the trial court to make a clearer determination of the compensation due to Mr. Lafleur and to eliminate patent ambiguity in the written reasons for judgment and the judgment.

Beginning Date for Payment of Compensation
In its written reasons for judgment, the trial court states that compensation is due from July 1, 1981, yet the court later refers to the date as April 22, 1981. The judgment itself, apparently prepared by Mr. Lafleur's attorney, fixes December 1, 1981 as the date on which benefits should have begun. We find that Mr. Lafleur became partially and permanently disabled on July 1, 1981, the approximate date of his second accident while employed at Tide. Accordingly the period of compensation of 450 weeks should begin on that date.

Payments Subject to Credits For Amounts Previously Paid
The trial court properly provided in its written reasons for judgment that compensation due should be subject to a credit "for all sums previously paid" and that "[a]ll accrued amounts be paid in a lump sum, together with legal interest thereon from date until paid..." Sums previously paid for which credit is due should include any worker's compensation paid as well as any wages earned to the extent allowed by law. The judgment as presently written awards plaintiff compensation in the sum of $6,683.29 "for the time period of December 1, 1981 until January 3, 1983..." Aside from the fact that the beginning date is in error, we are unable to determine that the record itself contains evidence upon which any specific computation may be made. Neither figures for specific salary which may have been paid plaintiff prior to his resignation nor amounts of compensation which may have been paid appear in the record.

Weekly Compensation Reduced By Subsequent Weekly Earnings
Under the statute a permanently partially disabled worker is entitled (for a maximum of 450 weeks) to 662/3 percentum "of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter..." (Emphasis added) The statute also refers to earnings "in any gainful occupation for wages..." Here we deal with profits from a sausage kitchen rather than a relatively fixed and constant wage in a new employment. Obviously profits should be treated the same as wages. Nevertheless, to do so presents accounting problems in practical application of self-evident magnitude. Profits in a business operation are not easily determinable on a weekly basis if in fact they may be so determined. Profits and losses are generally determined on an annual basis. Despite the problem presented, the credit for income, wages or otherwise, should be applied, according to the statutory requirement, on a weekly basis.
We shall return to the matter just discussed but at this point we note that whatever may be the result of compensation for any given week, the plaintiff will be restricted to the maximum weekly benefit provided by LSA-R.S. 23:1202(1). Martin v. H.B. Zachry Company, 424 So.2d 1002 (La.1982). In this case the parties have stipulated through counsel that this weekly amount is $148.00.

Earnings at the Time of Injury
Absent from the record is any evidence of the average weekly wage Mr. Lafleur was earning on July 1, 1981. From statements *730 in both briefs it is apparent that the amount of this wage was furnished to the trial court in a post-trial memorandum wherein counsel for plaintiff evidently stated it to be $237.50. In plaintiff's brief filed with this court plaintiff's counsel stated that, upon further reflection the figure should be $262.50. Counsel states that the figure of $237.50 "was based upon plaintiff's salary of $950.00 per month at the time of his initial injury in July, 1980." The figure of $262.50 is now urged before us as the correct figure because plaintiff's counsel urges that $262.50 "is based upon his [Lafleur's] earnings in July, 1981, when he reinjured his knee..." We agree that the wage earned on July 1, 1981 is the correct figure, but, as we have noted, the record is devoid of any evidence on this figure. Mr. Lafleur testified that he was earning $1,050.00 when he resigned which was near the end of the year 1981, but he did not testify that he was making this same salary when he was injured.
Defendant's counsel makes the following argument in its brief:
"Though it was stipulated at the time of trial that the plaintiff was earning ONE THOUSAND, FIFTY AND NO/100 ($1,050.00) DOLLARS per month when his employment was terminated, as pointed out by plaintiff's counsel in his Post-Trial Memorandum, the plaintiff was earning NINE HUNDRED, FIFTY AND NO/100 ($950.00) DOLLARS per month at the time of his accident and therefore that is the appropriate wage to deal with. Therefore, Mr. Lafleur's average weekly wage was TWO HUNDRED, THIRTY-SEVEN AND 50/100 ($237.50) DOLLARS. Sixty-six and two-thirds (662/3%) percent of this wage equals ONE HUNDRED, FIFTY-EIGHT AND 33/100 ($158.33) DOLLARS."
Frankly, we are unable to follow this argument. However, our inability is of no moment for we find that, although defendant's counsel states there was a stipulation as to the figure of $1,050.00 per month, there was no stipulation. Plaintiff's counsel mentions that figure in his opening statement but we do not find that it was ever agreed to by defendant's counsel.
In view of the above, the wage being earned by Mr. Lafleur on July 1, 1981 should be determined from evidence to be taken on remand unless counsel should stipulate on the matter.

Weekly Earnings After Plaintiff Resigned His Employment
We earlier alluded to the difficulty posed in attempting to apply the formula relative to permanent partial disability where the former worker earns business income rather than a wage after leaving the employment of the employer who owes compensation. One case which considered pre-injury wages and post-injury wages held that post-injury wages (i.e. in other employment) must be applied on a weekly basis. The Court of Appeal for the Fourth Circuit stated in Jones v. Orleans Parish School Bd., 370 So.2d 677 (La.App. 4th Cir.1979):
"Under the statute, compensation payments are due in those weeks when plaintiff's salary did not equal or exceed his weekly earnings prior to the accident. Although annual totals are available in the record there is insufficient evidence before us to compute the amount of compensation due. In order to properly compute the benefits, the plaintiff must furnish a breakdown of wages by the week. As the act states, the employer is to be allowed a credit for each week any wages are earned, no matter how small or how large the amount."
In Martin v. H.B. Zachry Company, supra, the Louisiana Supreme Court was faced with computing post-injury wages for a number of years. Working in his father's electrical contracting business after leaving the defendant's employment, plaintiff earned wages in 1976 and several years thereafter. Apparently, the Supreme Court had before it only yearly totals. It computed the post-injury wages to be deducted from the pre-injury wage by dividing the total annual wages by 52 weeks or, as in the case of 1976, by any lesser number of total weeks worked. This formula *731 was applied for the years 1976 through 1979. With reference to later years for which the record was deficient, the Supreme Court remarked:
"The record before us is complete through 1979, but we have no record of Martin's earnings for 1980 to the present. His weekly benefits for those years and hereafter, however, are to be calculated by Employers National according to this formula as set out in LSA-R.S. 23:1221(3). Legal interest shall accrue on all past due installments from the date due until paid."
In defendant's brief defendant's counsel makes a plea for guidance as to how future weekly benefits are to be calculated. Defendant asks whether it will be necessary to return to court for a trial each week to determine the profits in the Lafleurs' sausage business, what the evidence should consist of and who should make the accounting. We do not know that we can make any more answer than the Supreme Court gave in the Martin case which we quoted above.
While we have no answer for the future, we suggest that counsel may explore amicable agreement on procedure. Plaintiff's counsel states in his brief that to determine future benefits plaintiff "will furnish defendant a monthly statement of income for defendant to determine the amount of compensation due." From such a statement plaintiff appears to suggest that he is amenable to a monthly payment rather than a weekly payment. At oral argument, when queried concerning this offer, plaintiff's counsel reiterated his client's willingness to furnish monthly statements concerning income from the sausage business. It was pointed out from the bench that if monthly statements, rather than weekly statements, are furnished, it will require that compensation checks be issued on a monthly basis instead of on a weekly basis. In response, plaintiff's counsel replied that monthly issuance of compensation checks would be satisfactory, and, furthermore, plaintiff would object to furnishing weekly statements and thought that weekly statements would not properly reflect the net profit figures and would operate unfairly against plaintiff.
For the compensation which may be past due, including amounts which shall have accrued when this case is heard on remand, we think that guidelines are suggested in the Martin case. In Martin, weekly income was computed from total annual earnings. Obviously the same could be done on a monthly basis. In this regard the trial court should be accorded some discretion as it will be in a position to determine the nature and size of plaintiff's business and the feasibility of calculating the earnings (or losses) of the business on a monthly basis. As a matter of fact, the plaintiff's evidence in the record is in the form of monthly recapitulations. We realize that equitable arguments can be made for and against resort to annual totals rather than monthly totals. However, we will leave the matter to the sound discretion of the trial court suggesting only that, as practically as possible, the determination should be made to approach a weekly determination. Moreover, if monthly recapitulations should be agreed upon for the future, monthly computations for the past would be consonant with such procedure.
For the above reasons, these portions of the judgment awarding specific monetary benefits to Mr. Lafleur are reversed and set aside and this matter is remanded to the trial court for further proceedings in accordance with the views expressed herein and a redetermination of the specific benefits. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendant-appellant.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.