# Gene Hotaling v. St. Johnsbury Trucking Company

[572 A.2d 1351]

No. 88-511

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed February 2, 1990

*Julie A. Frame* of *Hoff, Wilson, Powell & Lang,* Burlington, for Defendant-Appellant.

**Gibson, J.** Employer appeals a decision of the Commissioner of Labor and Industry granting claimant temporary total disability payments under Vermont's workers' compensation program. We affirm.

. The undisputed facts indicate that claimant, a dock worker, injured his right knee while employed by St. Johnsbury Trucking Company on April 3, 1987. St. Johnsbury filed an injury report on the day of the accident, and the parties entered into an agreement for temporary total disability compensation, which was approved by the Commissioner. Claimant attempted to return to work on May 5, 1987 wearing a knee brace, but by June 24, 1987 was unable to continue. St. Johnsbury paid claimant temporary total disability benefits from April 20, 1987 through May 4, 1987 and from June 24 to September 29, 1987. Claimant underwent arthroscopic surgery in August, and on October 28, 1987 his doctor released him for "limited duty" work.

The Commissioner found that "[o]n more than one occasion claimant asked his employer about the possibility of returning to work in a 'light duty' capacity using a tow motor or other machine and avoiding heavy lifting." St. Johnsbury declined, citing its policy not to accept an injured employee back to work until he has been given a "clean bill of health" and a total release for work from a physician.

In March of 1987, prior to the knee injury, claimant started a part-time trash-hauling business, which he continued after his injury. He had thirty-three customers in April and sixty-two in May. On one occasion, the insurance carrier's investigator observed claimant working at the trash-hauling business without the use of crutches, a day when his hired helper was unavailable. St. Johnsbury asserts that when it entered into the agreement for temporary total disability compensation, it was not advised that claimant "was gainfully self-employed in a trash hauling business." When the employer learned of claimant's involvement in this business, it filed a notice of intention to discontinue compensation, and ended temporary total compensation payments on September 29, 1987.

The Commissioner found that "[t]here is no evidence that claimant's trash hauling business was an insured employer, nor is there any evidence that it was a self-insurer under the Workers' Compensation Act." She determined that claimant's benefits should not be reduced to reflect only temporary partial

disability, that St. Johnsbury should have continued making temporary total disability payments up to November 6, 1987, the day claimant returned to work full-time, and that it should pay all medical bills related to treatment of claimant's right knee. The present appeal followed, and the Commissioner has certified the following questions for review:

I. Should the income which the claimant received from a trash hauling business started prior to his injury and operated in addition to his work for St. Johnsbury Trucking Company be used to reduce his entitlement for temporary total disability benefits to temporary partial disability benefits because the claimant maintained his trash hauling business during the period he was unable to work for St. Johnsbury Trucking?

II. If the answer to the first question is yes, should all of the profits received from the trash hauling business be considered when reducing the claimant's entitlement, or should only that portion of the income which can be determined to be wages be considered?

III. Since St. Johnsbury Trucking Company treated the claimant as temporarily totally disabled, refusing his requests for light duty work, is it equitably estopped from asserting that claimant is only temporarily partially disabled?

IV. Was it error for the Commissioner to not revoke and reopen an agreement for temporary total disability benefits, when the Commissioner determined that, even though the agreement did not reflect the claimant's profits from his trash hauling business because he was not aware that he had to report them, the agreement nonetheless adequately reflected the claimant's earning capacity?

St. Johnsbury contends that claimant was not totally disabled from work since he derived income from his trash-hauling business during the alleged disability period. In *Sivret v. Knight*, 118 Vt. 343, 109 A.2d 495 (1954), we set forth the applicable legal standard for determining total incapacity for work:

The term "incapacity for work" means loss of earning power as a workman in consequence of the injury, whether

the loss manifests itself in inability to perform such work as may be obtainable or inability to secure work. . . . The test is not whether the injured employee is totally incapacitated from performing the same kind of labor as he was performing at the time of his injury but whether he is capable of performing any kind of available work.

*Id.* at 346, 109 A.2d at 497–98.

■ Although the principal measure of a person's earning capacity is the wages he or she is able to earn, earning capacity does not necessarily mean the actual earnings made by an individual after receiving an injury. Rather, the test is one of capacity to earn: whether the claimant is employable or able to sell his or her services on a regular basis in an open labor market under normal employment conditions. *Compensation of Harris v. Saif Corp.*, 292 Or. 683, 695, 642 P.2d 1147, 1153 (1982) (en banc); 2 A. Larson, The Law of Workmen's Compensation § 57.21(d) (1989). The fact that a claimant conducts a business subsequent to the onset of his or her disability is not necessarily evidence that he or she is "capable of performing any kind of available work"; in fact, it is uniformly held that a finding of disability may stand even when there is evidence of post-injury earnings equaling or exceeding those received before the injury. See 2 A. Larson, *supra*, § 57.21(c); see also *Compensation of Harris*, 292 Or. at 694, 642 P.2d at 1153 (real estate investment earnings did not bear on employability and could not terminate disability award despite fact that such income might exceed wages earned by claimant at former job prior to his disabling injury); *Pilot Freight Carriers, Inc. v. Reeves*, 1 Va. App. 435, 442, 339 S.E.2d 570, 573 (1986) (claimant's operation of struggling trucking business after injury precluded employment as truck driver and did not negate commission's determination that benefits should continue).

■■ The Commissioner may scrutinize the conduct of a sole proprietorship to determine if the profits are the functional equivalent of wages, see *Lafleur v. Hartford Ins. Co.*, 449 So. 2d 725, 729 (La. Ct. App. 1984), but, in general, profits from a business are not the equivalent of wages, and are no substitute for wages for purposes of establishing an average wage. 2 A. Lar-

son, *supra,* § 60.12(e). Evidence of the limits on claimant's functioning and mobility in the present case supports the Commissioner's decision to disregard the business in her determination of claimant's average weekly wage. When supported by the evidence, findings of the Commissioner are binding on this Court. *King v. Snide,* 144 Vt. 395, 399, 479 A.2d 752, 754 (1984).

The Commissioner found that because of continuing problems with his knee when he attempted to return to work after his injury, claimant underwent surgery at his doctor's recommendation. The Commissioner also found that claimant required a helper to conduct his trash-hauling business after his surgery, that he used crutches in the course of his activities during this period, and that on one occasion when he did not use crutches, he limped noticeably. Further, the Commissioner found that this work, although it took only about ten hours of claimant's time per week, was contrary to the instructions of his doctor with respect to avoiding lifting and keeping weight off the injured leg, and that the doctor did not release claimant for "limited duty" work until October 28, 1987. These findings are amply supported by the evidence and do not compel the conclusion that claimant might have been hired to perform "any kind of available work." It appears far more likely that, with his injury, his own business was the only gainful work available to him and that he performed this work solely out of a necessity to keep the business going.

The statutory provision for computation of wages states:

> Average weekly wages shall be computed in such manner as is best calculated to give the average weekly earnings of the worker during the twelve weeks preceding his injury. . . . If the injured employee is employed in the concurrent service of more than one insured employer or self-insurer his total earnings from the several insured employers and self-insurers shall be combined in determining his average weekly wages, but insurance liability shall devolve exclusively upon the employer in whose employ the injury occurred. . . .

21 V.S.A. § 650(a). The Commissioner concluded that there was no evidence that claimant's trash-hauling business was an in-

sured employer or a self-insurer, and St. Johnsbury has not demonstrated on appeal that this conclusion was without support in the record. We therefore answer the first certified question in the negative.

Question II, which was conditional upon an affirmative answer to Question I, is moot.

We need not reach Question III, because we have determined that claimant was entitled to temporary total disability benefits for the subject period, apart from principles of estoppel.

We answer Question IV in the negative, since the proceeding below was adequate to establish the rights of the parties and, by the terms of the question itself, despite the claimant's failure to advise St. Johnsbury of the profits from his trash-hauling business, "the agreement nonetheless adequately reflected the claimant's earning capacity."

*The first and fourth certified questions are answered in the negative. The Court does not reach the second and third certified questions for the reasons stated herein.*