THE WASHINGTON POST, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,

Adil Mukhtar, Intervenor.

No. 95–AA–228.

District of Columbia Court of Appeals.

Argued Feb. 16, 1996.
Decided April 18, 1996.

William H. Schladt, Gaithersburg, MD, for petitioner.

Charles F.C. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Alan S. Toppelberg, Washington, DC, for intervenor.

Before TERRY, SCHWELB, and KING, Associate Judges.

SCHWELB, Associate Judge:

On November 9, 1994, following an evidentiary hearing, a hearing and appeals examiner of the District of Columbia Department of Employment Services (DOES or the agency) found that intervenor Adil Mukhtar, who was formerly employed by petitioner, The Washington Post (the Post), had suffered temporary total disability as a result of a work-related injury. The examiner issued a compensation order based upon that finding. The Post filed an internal appeal of the compensation order, but the order became final when no final decision was issued by the Director within forty-five days. *See* D.C.Code § 36–322(b)(2) (1993 Repl.).

The Post has now filed a petition for review in this court. The Post contends that the examiner's finding of temporary total disability was based on an incorrect legal standard and that two of the examiner's evidentiary rulings were erroneous. We agree in part with the Post's position, and we

therefore vacate the agency's decision and remand for further proceedings.

## I.

On January 21, 1992, Mukhtar, who was then employed in the Post's Maintenance Department, was operating a forklift in the vicinity of a loading dock. The brakes on the forklift failed, and the forklift struck the dock. Mukhtar suffered injuries to his back. Mukhtar continued his employment with the Post for approximately seven months after the accident. He claims, however, that his condition subsequently deteriorated, and that he became unable to perform his duties. He has not worked for the Post since August 19, 1992.

Mukhtar filed a claim for compensation and, on September 20, 1993, an evidentiary hearing was held before the examiner. More than a year later, the examiner issued her detailed findings of fact and conclusions of law. The examiner found, *inter alia*,[1] that Mukhtar suffered from temporary total disability as a result of his work-related accident. She found that Mukhtar "is capable of maintaining light duty employment with a restriction on lifting over 10 pounds," but noted that "employer has not offered claimant light duty employment." Apparently on the basis of the Post's failure to make such an offer, the examiner concluded that Mukhtar was entitled to temporary total disability benefits from August 19, 1992 "to the present and continuing," and to interest on accrued benefits. She held that this entitlement would continue "until suitable alternative employment is offered or until the disability resolves, whichever comes first."

## II.

■■■ "The scope of our review of the agency's orders is defined by the now-familiar 'substantial evidence' standard." *Harris v. District of Columbia Office of Worker's Comp.*, 660 A.2d 404, 407 (D.C.1995). We must sustain the examiner's factual findings if they are supported by substantial evidence in the record as a whole. *Id.; see* D.C.Code § 1–1510(a)(3)(E) (1992 Repl.). As we reiterated in *Harris*, however,

> our review of the agency's legal rulings is *de novo*, for "[i]t is emphatically the province and duty of the judicial department to say what the law is," *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803), and the judiciary is the final authority on issues of statutory construction. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984).

*Id.* Although courts accord considerable weight to an agency's construction of a statute which the agency administers, *see, e.g., Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Joyner v. District of Columbia Dep't of Employment Servs.*, 502 A.2d 1027, 1031–32 (D.C.1986) (citation omitted), we conclude in this case that the examiner's finding of temporary total disability was based on an incorrect legal standard.

■■■ Our compensation statute provides that "[i]n case of disability total in character but temporary in quality, 66⅔% of the employee's average weekly wages shall be paid to the employee during the continuance thereof." D.C.Code § 36–308(2) (1993 Repl.).[2] " 'Disability' means physical or mental incapacity because of injury which results in the loss of wages." *Id.* Disability is an economic and not a medical concept. *American Mut. Ins. Co. v. Jones*, 138 U.S.App.D.C. 269, 271, 426 F.2d 1263, 1265 (1970).[3] As the court explained in *American Mut. Ins. Co.*,

> [t]he degree of disability in any case cannot be measured by physical condition alone, but there must be taken into consid-

---

1. We summarize only those of the examiner's findings which are relevant to the issues raised in the Post's petition for review.

2. Unless otherwise stated, all references to the District of Columbia Code are to the 1993 Replacement Volume.

3. *American Mutual* involved a claim under the Longshoremen and Harbor Workers Act, 33 U.S.C. §§ 901–950 (1964). The definition of disability in that statute, quoted by the court, 138 U.S.App.D.C. at 271 n. 7, 426 F.2d at 1265 n. 7, differed slightly, but not materially, from that in our current statute.

eration the injured man's age, his industrial history, and the availability of the type of work which he can do. Even a relatively minor injury must lead to a finding of total disability if it prevents the employee from engaging in the only type of gainful employment for which he is qualified. . . .

Conversely, a continuing injury that does not result in any loss of wage-earning capacity cannot be the foundation for a finding of disability.

*Id.* at 271–72 & n. 9, 426 F.2d at 1265–66 & n. 9 (citations, footnotes, and internal quotation marks omitted).

▉▉▉ Because disability is an economic concept, its existence depends on the realities of the marketplace. A claimant suffers from total disability if his injury prevents him from engaging in the only type of gainful employment for which he is qualified. *Id.* at 272, 426 F.2d at 1266; *see also Abex Corp. v. Brinkley*, 252 A.2d 552, 553 (Del.Super.1969). Total disability does not mean absolute helplessness, *Sherwood v. Gooch Milling & Elevator Co.*, 235 Neb. 26, 453 N.W.2d 461, 467 (1990), and the claimant need not show that he is no longer able to do any work at all. *Gulf Ins. Co. v. Gibbs*, 534 S.W.2d 720, 724 (Tex.Civ.App.1976). In the words of the leading treatise,

> [e]vidence that claimant has been able to earn occasional wages or perform certain kinds of gainful work does not necessarily rule out a finding of total disability nor require that it be reduced to partial. . . . The rule followed by most modern courts has been well summarized by Justice Matson of the Minnesota Supreme Court in the following language:
>
>> An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled.

2 ARTHUR LARSON, WORKMENS' COMPENSATION LAW, § 57.51(a), at 10–283 to 10–288 (1995)

4. The Post argues that its failure to offer Mukhtar a light duty job is irrelevant because Mukhtar did not ask for one. The fact that Mukhtar did not make such a request may well be one relevant factor in the inquiry, but we know of no support

(quoting *Lee v. Minneapolis St. Ry. Co.*, 230 Minn. 315, 41 N.W.2d 433, 436 (1950)).

This court has held that the burden is on the employer to prove that work for which the claimant was qualified was in fact available. *Joyner, supra,* 502 A.2d at 1031 & n. 4. We explained, however, that the employer can meet this burden "by proof short of offering the claimant a specific job or proving that some employer specifically offered claimant a job." *Id.* at 1031 n. 4 (quoting *Trans–State Dredging v. Benefits Review Bd.*, 731 F.2d 199, 201 (4th Cir.1984)) (quoting *New Orleans (Gulfwide) Stevedores v. Turner,* 661 F.2d 1031, 1043 (5th Cir.1981)). We so held because a contrary rule

> would invite at least some claimants to adopt a passive, or even negative, attitude about pursuing re-employment, since workers' compensation benefits could be terminated only after the claimant refused a specific offer. There might be no specific offer if the claimant failed to take the steps usually necessary to procure offers (*e.g.,* investigating job opportunities, circulating resumes, interviewing, etc.).

502 A.2d at 1031.

▉▉▉ In the present case, the examiner apparently believed that the Post's failure to offer Mukhtar a "light duty" position conclusively established that Mukhtar was entitled to temporary total disability benefits. This aspect of her decision cannot be reconciled with our decision in *Joyner,* which was itself based on the agency's interpretation of the statute. Accordingly, we must remand the case to the agency for further consideration under the standard adopted by this court in *Joyner.*[4]

———

Because a remand is necessary in any event, and because the evidentiary issues presented to us by the Post are likely to arise again in further proceedings before the agency, we now address those issues.

for the Post's apparent position that it is dispositive. The appropriate factors for an inquiry into job availability are set forth in *Joyner,* 502 A.2d at 1031 n. 4.

### III.

At the time of his accident, Mukhtar was the sole proprietor of a used car dealership, as well as an employee of the Post. At the hearing, counsel for the Post sought to cross-examine Mukhtar regarding his profits from the dealership and to introduce evidence on that subject, hoping to show that Mukhtar's earnings at the business exceeded his lost wages at the Post. Mukhtar's attorney objected on relevance grounds. After hearing argument, the examiner excluded the evidence:

> He could make Three Hundred Thousand Dollars a year just sitting at a desk. I am going to sustain the objection.

The Post contends that the examiner's ruling was based on an erroneous understanding of the law. Noting that "disability" is defined in the District as "physical or mental incapacity because of injury *which results in the loss of wages,*" D.C.Code § 36–301(8) (emphasis added), the Post asserts that Mukhtar's wage loss from his job at the Post must be offset by his earnings elsewhere. If Mukhtar's post-injury earnings from his used car business exceeded his combined pre-injury earnings, then, according to the Post, Mukhtar sustained no loss of wages as a result of his injury and therefore has no disability within the meaning of Section 36–301(8).

■■■■■ But "income from a business owned by the claimant, even though he contributes some work to it, should not be used to reduce disability." 2 LARSON, *supra* § 57.51(e), at 10–354. "The general rule is that profits derived from a business are not be considered as earnings and cannot be accepted as a measure of loss of earning power unless they are almost entirely the direct result of [the claimant's] personal management and endeavor." *Clingan v. Fairchance Lumber Co.,* 166 Pa.Super. 331, 71 A.2d 839, 840 (1950); *see also Joy Tech., Inc. v. Workmen's Comp. App. Bd.,* 155 Pa. Cmwlth. 9, 624 A.2d 710, 711 (1993); *Fruehauf Corp. v. Workmen's Comp. App. Bd.,* 126 Pa.Cmwlth. 298, 559 A.2d 609, 610 (1989).

*Hotaling v. St. Johnsbury Trucking Co.,* 153 Vt. 581, 572 A.2d 1351 (1990), is analogous to the instant case. In *Hotaling,* the employer contended that the claimant was not totally disabled from work because he derived income from his trash hauling business during the alleged disability period. The court held, however, that

> [t]he fact that a claimant conducts a business subsequent to the onset of his or her disability is not necessarily evidence that he or she is "capable of performing any kind of available work"; in fact, it is uniformly held that a finding of disability may stand even when there is evidence of post-injury earnings equaling or exceeding those received before the injury. See 2 A. Larson, *supra,* § 57.21(c)....

> The Commissioner may scrutinize the conduct of a sole proprietorship to determine if the profits are the functional equivalent of wages, see *Lafleur v. Hartford Ins. Co.,* 449 So.2d 725, 729 (La.Ct.App. 1984), but, in general, profits from a business are not the equivalent of wages....

*Id.* at 1353–54.

■■■■ In the present case, the examiner did not refuse to admit any evidence proffered by the Post concerning what portion, if any, of Mukhtar's business income was the direct result of Mukhtar's personal management and endeavor. Indeed, the examiner allowed the Post to inquire into the nature of the work that Mukhtar performed for his used car dealership. Mukhtar testified that he manages three salesmen, that he receives a profit from their sales, and that he performs light office work. The additional evidence proffered by the Post, but excluded by the examiner, included documents revealing the commissions earned by Mukhtar's employees which, according to the Post, would have demonstrated the amount of profit that Mukhtar derived from his employees' car sales. However, Mukhtar's business profits are not "wages" unless they are directly attributable to his personal management and endeavor, and counsel for the Post did not proffer that this was the case. We therefore conclude that the examiner did not err by refusing to admit evidence of the salesmen's commissions, or in declining to permit the Post to cross-examine Mukhtar about the profits from his business.

## IV.

The Post commissioned Commercial Index Bureau, Inc. (CIBI), a detective agency, to prepare an undercover surveillance videotape of Mukhtar performing various tasks at his used car dealership. The evident purpose of the videotape was to refute some of Mukhtar's claims regarding the extent of his disability. CIBI submitted a report which disclosed that Mukhtar had in fact been videotaped on May 20, 1992.

At the hearing, the Post proffered as a witness one Levian, a CIBI employee, who was to testify regarding the surveillance and to present the videotape. Levian disclosed, however, that he was not the individual who actually observed and videotaped Mukhtar. The examiner concluded that Levian was therefore not qualified to testify, dismissed him from the hearing room, and excluded the videotape. The Post contends that this ruling was erroneous.

 The determination whether to admit photographic evidence is confided to the discretion of the trial judge. *Simms v. Dixon*, 291 A.2d 184, 186 (D.C.1972). In this case, which involves an administrative proceeding, the discretion to receive or exclude evidence must be exercised by the agency, *see Kopff v. District of Columbia Alcoholic Beverage Control Bd.*, 381 A.2d 1372, 1386 (D.C.1977), and thus in the first instance by the examiner, whose position in the agency is analogous to that of a trial judge.

The examiner's discretion, however, is not unfettered. It must be founded upon correct legal principles. *See In re J.D.C.*, 594 A.2d 70, 75 (D.C.1991). The examiner's very brief explanation of her ruling is difficult to reconcile with the law of evidence as it applies to the proceedings of administrative agencies.

 If the examiner's decision was based, as it appears to have been, on the view that only the photographer could properly authenticate the videotape, then that decision rested on a fallacious predicate. "The witness who ... lays the foundation need not be the photographer, nor need the witness know anything of the time or conditions of the taking." *Simms, supra*, 291 A.2d at 186 (quoting C. McCORMICK, EVI-

DENCE § 181, at 387 (1954)). "The essential test is whether the photographs accurately represent the facts allegedly portrayed in them." *Id.* (citations omitted); *see also District of Columbia Transit Sys., Inc. v. Acors*, 293 A.2d 871, 873 (D.C.1972). "[T]he testimony necessary to inform the [trier of fact] of the accuracy of photographs may be provided by a witness who is not the photographer." *Rich v. District of Columbia*, 410 A.2d 528, 531 (D.C.1979) (citing *Simms, supra*, 291 A.2d at 186).

 Although Levian was not present when Mukhtar was videotaped, he was evidently prepared to testify about the surveillance on the basis of information which the photographer reported to him. Such testimony would, of course, have been hearsay, but that fact alone did not justify its exclusion. As we recently reiterated in *James v. District of Columbia Dep't of Employment Servs.*, 632 A.2d 395 (D.C.1993), "[h]earsay evidence is admissible in administrative proceedings unless it is irrelevant, immaterial, or unduly repetitious." *Id.* at 398 (quoting *Lim v. District of Columbia Taxicab Comm'n*, 564 A.2d 720, 724 (D.C.1989)). "If hearsay evidence is found to be reliable and credible, it may constitute substantial evidence." *Simmons v. Police & Firefighters' Retirement & Relief Bd.*, 478 A.2d 1093, 1095 (D.C.1984); *James, supra*, 632 A.2d at 398. Indeed,

the strict rules of evidence applicable to the trial of cases are of limited use in the administrative arena. Because there is no jury to shield, and individual agency members are presumed capable of properly assessing the reliability and weight of evidence, greater flexibility and discretion as to admission are permitted. 2 Davis, Administrative Law Treatise § 14.01 *et seq.* (1958). *Failure to apply these generous principles of admissibility can be a basis for reversal of an agency decision, although prejudice must be shown. Wallace v. District Unemployment Comp. Board*, D.C.App., 294 A.2d 177 (1972); *Carter–Wallace, Inc. v. Gardner*, 417 F.2d 1086 (4th Cir.1969).

*Kopff, supra,* 381 A.2d at 1385 (emphasis added).

In the present case, it would not have been difficult to evaluate the reliability of the proffered videotape as depicting what it purported to depict. The Post offered the exhibit as one showing Mukhtar engaging in various activities at his place of business. The examiner could presumably have determined visually whether the person being videotaped was in fact Mukhtar. The place of business could likewise have been readily identifiable. Moreover, Mukhtar was present at the hearing, and if he was not the person shown on the videotape, he could have so testified.

Although it has been said that "the camera never lies," we recognize that a videotape can be misleading. A biased photographer may be selective with respect to what he captures on camera and what he leaves out. In this case, he could, at least theoretically, focus on Mukhtar carrying apparently heavy objects, but refrain from recording any events which tended to verify Mukhtar's claims of disability. The photographer's unavailability for cross-examination might in some measure inhibit Mukhtar's counsel from showing bias on the part of the photographer.[5]

 In the absence of some showing that the videotape was deceptive, however, the mere possibility of selectiveness or bias on the part of the photographer goes to the weight to be given the evidence, not to its admissibility. Indeed, an administrative agency may, and in many instances should, accord less weight to hearsay evidence than to the sworn testimony of witnesses. As we stated in *James, supra,*

administrative findings and conclusions based exclusively on hearsay are subject to exacting scrutiny ... More than once we have declined to uphold a DOES finding of misconduct where an employer's hearsay

evidence was refuted by the claimant's sworn testimony.

632 A.2d at 398 (citations and internal quotation marks omitted). *James* and the authorities there cited are necessarily predicated, however, on the admissibility of the hearsay evidence; principles governing the weight of such evidence come into play only after it has been admitted.

 Surveillance evidence may have considerable probative value, especially if it shows a claimant performing tasks which could not be carried out by a person with the disabilities from which the claimant claims to be suffering. Our examination of the record suggests that in summarily excluding the videotape, the examiner applied legal principles substantially more restrictive than those which we have outlined above. Upon remand, the agency must reconsider the question of the admissibility of the videotape and related evidence in light of the authorities cited in this opinion.

## V.

For the foregoing reasons, the Compensation Order is vacated and the case is remanded to DOES for further proceedings consistent with this opinion.

*So ordered.*[6]

---

5. Mukhtar could, however, provide his own account as to the events depicted in the videotape.

6. The Post also contends that the agency's decision should be set aside because the examiner issued her decision almost fourteen months after the hearing. The applicable statute provides that "[w]ithin twenty days after such hearing is held, the Mayor shall by order reject the claim or make an award in respect of the claim based upon substantial evidence before him." D.C.Code § 36–320(c) (1993 Repl.). In light of our disposition, we need not reach this claim. *But see Hughes v. District of Columbia Dep't of Employment Servs.,* 498 A.2d 567, 571 n. 8 (D.C. 1985) (time limit in Section 36–320(c) is directory rather than mandatory).