**William MORRISON, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SER-VICES, Respondent,**

**Washington Hospital Center, Intervenor.**

**No. 97–AA–1293.**

District of Columbia Court of Appeals.

Argued Sept. 22, 1998.
Decided Aug. 19, 1999.

George E. Swegman, Washington, DC, for petitioner.

John C. Duncan, III, Alexandria, VA, for intervenor.

Jo Anne Robinson, Principal Deputy Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, filed a Statement in Lieu of Brief for respondent.

Before TERRY and RUIZ, Associate Judges, and PRYOR, Senior Judge.

RUIZ, Associate Judge:

This appeal presents the question whether an injured worker may receive benefits for more than one disability resulting from the same injury. In this case, petitioner, an X-ray technician, was injured while lifting a patient out of a wheelchair. As a result of this injury, he was unable to return to his full-duty position at Washington Hospital Center, and subsequently obtained a light-duty X-ray technician position with a different employer, but at a reduced salary. The Director of the Department of Employment Services (DOES) determined that the petitioner was entitled to payments for a "schedule injury" under D.C.Code § 36–308(3)(A) (1997), based on a permanent partial disability to his right arm. On appeal, petitioner contends that he is entitled to additional, permanent partial disability "non-schedule" benefits under D.C.Code § 36–308(3)(V) for his shoulder disability. Because the hearing examiner did not make a clear factual finding as to whether petitioner suffers from a disability to his shoulder in addition to the disability to his arm, we vacate the Director's decision and remand for a determination of the extent of petitioner's disability. Should the agency find that petitioner has a shoulder disability, we hold that petitioner is entitled to both schedule and non-schedule benefits if he is able to show that the shoulder disability led to wage loss.

## I.

■ This court reviews the Director's final decision, see Washington Metro. Area Transit Auth. (WMATA) v. District of Columbia Dep't of Employment Servs., 683 A.2d 470, 472 (D.C.1996), to determine whether it is supported by "substantial evidence." D.C.Code § 1–1510(a)(3)(E) (1999). Substantial evidence is " 'more than a mere scintilla;' " rather, it is " 'such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *George Hyman Constr. Co. v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 563, 566 (D.C.1985) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (citations omitted)). Where questions of law are at issue, however, this court reviews the Director's rulings *de novo, see KOH Sys. v. District of Columbia Dep't of Employment Servs.*, 683 A.2d 446, 449 (D.C.1996), deferring to the Director's interpretation of the statute it enforces unless the interpretation " 'conflicts with the statute, is inconsistent with the [governing] regulation, or otherwise is contrary to established legal doctrine.'" *Id.* at 449–50 (quoting *Gunty v. Department of Employment Servs.*, 524 A.2d 1192, 1196 (D.C.1987)) (alteration in original).

■ The statute that provides for payments for permanent partial disabilities divides such disabilities into two categories: "schedule" and "non-schedule." D.C.Code § 36–308(3)(A)–(M) lists certain parts of the body which, if permanently disabled, entitle the worker to disability payments equal to the number of weeks' compensation listed for that body part in the schedule. D.C.Code § 36–308(V) provides a formula for compensating disabilities that are not expressly set out in the schedule, measured in terms of actual wages lost as a result of the disability. A worker who suffers a schedule disability, i.e., one for which the statute provides a fixed payment in terms of weeks of compensation, may not opt to recover actual lost wages in lieu of the fixed amount available for such a disability. *See Lenaerts v. District of Columbia Dep't of Employment Servs.*, 545 A.2d 1234, 1238 (D.C. 1988) (citing *Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs*, 449 U.S. 268, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980)). Petitioner contends that he is not attempting to change the basis of payment for the disability to his arm, but rather to recover for the additional disability he suffered to his shoulder which is compensable in terms of actual lost wages.

We have not yet decided whether a worker is entitled to receive both schedule and non-schedule disability payments for multiple disabilities arising from the same work-injury. Intervenor, the Washington Hospital Center, maintains that *Kovac v. Avis Leasing Corp.*, H & AS No. 84–177, OWC No. 0000792 (July 17, 1986), limits petitioner's remedy to schedule loss benefits. In *Kovac*, the Director concluded that the situs of the disability, not the situs of the injury, controls, *see id.* at 6, but expressly left open the question of whether a petitioner may obtain both schedule and wage loss benefits concurrently where there is only one injury. *See id.* at 6–7. Therefore, *Kovac* is not controlling on our facts.[1] In *WMATA, supra*, this court held that the Director's interpretation in *Kovac*—that the situs of the disability controls—was reasonable. *See id.* at 475. We also recognized the possibility that a petitioner may be entitled to both schedule and non-schedule awards for multiple dis-

---

1. Respondent cites several other H & AS cases in support of its contention that petitioner's remedy in this case is limited to schedule benefits for his disabled arm. However, none of these cases dealt specifically with a petitioner who claims two separate disabilities, schedule and non-schedule, from a single injury. *See Young–Dade v. Washington Metro. Area Transit Auth.*, H & AS No. 92–339, OWC No. 191687 (Nov. 23, 1993) (denying schedule award benefits for left upper extremity (arm) based on evidence suggesting that shoulder injury caused shoulder disability rather than arm disability); *Balder-*

*amos v. Marriott Corp.*, H & AS No. 84–302, OWC No. 0024384 (Sept. 18, 1986) (granting schedule award benefits for arm disability resulting from shoulder injury); *Moore v. Washington Metro. Area Transit Auth.*, H & AS No. 88–589, OWC No. 0038044 (Nov. 29, 1988) (denying schedule award benefits for arm disability because unclear whether 10% disability rating was limited to right arm or included shoulder); *Muse v. Giant Food*, H & AS No. 90–503, OWC No. 0126124 (Oct. 18, 1990) (granting schedule award benefits for left upper extremity (arm) disability caused by work-induced carpal tunnel syndrome).

abilities resulting from a single injury. *See id.* at 472, 474 n. 4 (noting that stipulation agreement between employer and employee, in which employer provided wage loss compensation for back disability, did not preclude employee from seeking schedule award for "separate and distinguishable" leg disability resulting from same injury). However, this multiple disability issue was not directly presented to the *WMATA* court, nor have we had the opportunity since *WMATA* to decide whether the Workers' Compensation Act, D.C.Code § 36–301 *et seq.*, permits concurrent benefits on proof of multiple disabilities.

■ Since *Kovac*, the Director has expressly held that a claimant is entitled to both schedule and non-schedule benefits for multiple disabilities stemming from the same injury. *See Fawley v. EGS Masonry, Inc.*, Dir. Dkt. No. 86–31, H & AS No. 84–296, OWC No. 001335 (Oct. 18, 1988) (awarding non-schedule wage loss benefits upon finding that claimant suffered a disability to his shoulder as well as to his arm from a single injury); *see also Gill v. Health Care Inst.*, H & AS No. 87–575, OWC No. 0089494 (Nov. 30, 1987) (awarding non-schedule benefits after concluding that claimant disabled both left arm and the left upper extremity). This approach is consistent with both our case law, *see WMATA, supra*, 683 A.2d at 475 (situs of disability, not situs of injury, controls), and

the overall purpose of the statute. *See, e.g., Kolson v. District of Columbia Dep't of Employment Servs.*, 699 A.2d 357, 359 (D.C.1997) (noting presumption of compensability "designed to effectuate the humanitarian purposes of the statute"). Therefore, we hold that when a petitioner suffers multiple disabilities from a single injury, that petitioner is entitled to both schedule and non-schedule benefits, subject to proof that the non-schedule disability led to wage loss. *See KOH Sys., supra*, 683 A.2d at 449–50 (deferring to Director's interpretation of statute agency enforces unless interpretation conflicts with statute or is contrary to established legal doctrine).

## II.

Petitioner asserts that the hearing examiner erred by acknowledging a permanent shoulder disability in the compensation order, but denying wage loss benefits nonetheless.[2] The hearing examiner did not, however, make a specific finding as to the existence of a shoulder disability, but instead awarded schedule benefits[3] for a disability to the "right upper extremity."[4] The hearing examiner denied petitioner's requested wage loss benefits for his shoulder disability despite language in the compensation order suggesting that petitioner suffered both an arm and a shoulder impairment. While discussing the situs of the disability, the hearing examiner's com-

2. At oral argument, petitioner suggested that, in the compensation order, the hearing examiner clearly recognized the permanent disability to his shoulder before denying benefits, and that the record as a whole supports his shoulder disability claim. In his brief or appeal, petitioner does not specifically refer to the language of the compensation order, but still maintains that there is substantial evidence in the record to support his shoulder disability claim.

3. The hearing examiner awarded schedule benefits pursuant to D.C.Code § 36–308(3), which states in pertinent part:

In case of disability partial in character but permanent in quality, the compensation

shall be 66⅔% of the employee's average weekly wages ... and shall be paid to the employee, as follows:

(A)Arm lost, 312 weeks' compensation ...

4. Although the hearing examiner did not define the term "right upper extremity," it is clear from the fact that the examiner awarded schedule benefits, pursuant to § 35–308(3)(A), that this term refers to the right arm. This conclusion is supported by the Director's decision affirming the compensation order, referring to a 1990 medical report, written by Dr. Gunther, petitioner's treating physician, in which the doctor states that the right upper extremity is "synnomous [sic] with the right arm."

pensation order relied on petitioner's testimony to find that the "actual loss of function is to the extremity itself, and extends all the way down to the hand," concluding "that it is his arm which, as a result of the work-injury, has become impaired and *not merely his shoulder*." (emphasis added). Notwithstanding these conclusions, the hearing examiner, relying entirely on Dr. Gunther's 1989 medical report stating that petitioner has a permanent loss of 10% of the function of the "right upper extremity," denied petitioner's claim for non-schedule benefits and awarded him benefits based on a partial loss of function of his arm.

Not only does the compensation order appear to recognize petitioner's shoulder disability claim, there is also additional evidence in the record, overlooked in the compensation order, which supports this claim. A review of Dr. Gunther's medical reports in their entirety bolsters petitioner's contention that he experienced shoulder impairment as a result of the work-related injury. Dr. Gunther's treatment notes consistently reference petitioner's acute shoulder pain. For example, in his November 6, 1989 report, Dr. Gunther relates petitioner's subjective complaint that he experiences substantial pain in his shoulder when he moves his arm overhead. Dr. Gunther notes further that, although petitioner can "abduct and flex up overhead," he lacks about thirty degrees of the normal range of motion. In explaining his disability rating, Dr. Gunther states:

> I feel that based on his rotator cuff tear, the pain which he claims to have, and *the fact that he has a basically good arm with good function,* I feel that he has a

permanent [partial] loss of 10% of the function of the right upper extremity. (Emphasis added). At the hearing, Dr. Gunther first explained that the term "right upper extremity" encompassed both the shoulder and the arm. He further stated that petitioner suffered from a "permanent injury of the shoulder" which impaired his ability to work overhead and "would not recover 100 percent." When asked to specify the "anatomical basis" for his diagnosis, Dr. Gunther replied that his treatments and opinions relate to petitioner's shoulder and that petitioner's physical problems were in the shoulder joint.[5]

Not mentioned in the compensation order are medical reports from other doctors that further strengthen petitioner's claim that he suffered a disability to his shoulder. Dr. Drapkin, an orthopaedic surgeon consulted at the request of the employer's insurer, determined that petitioner had suffered a "15% permanent partial disability to his right shoulder" which affected his right arm. Dr. Shaffer, an orthopaedic surgeon specializing in hand surgery,[6] concluded that petitioner "probably has some lack of full congruity of motion of the [shoulder] joint with catching and pain" which, in turn, caused swelling of the joint and nerve compression in the right arm.[7]

Finally, petitioner's own testimony supports his contention that his work-related shoulder injury left a residual shoulder disability. Although he testified that he suffers from various hand and arm impairments, he also stated that it is the constant pain in his shoulder, akin to a "toothache," which causes shoulder spasms that ultimately spread to his hand. In addition, petitioner indicated that, as a result of this

5. After being asked by the employer's insurer to further explain the term "right upper extremity," however, Dr. Gunther professed unfamiliarity with the District's disability rating guidelines, but equated his use of "right upper extremity" to the statutory term "arm."

6. Dr. Shaffer, consulted at the behest of petitioner's lawyer, noted in his deposition that he no longer performs shoulder surgery.

7. Petitioner also consulted Drs. Mininberg and Neviaser, both of whom noted petitioner's complaints of shoulder pain, and diagnosed atrophy and loss of function in the shoulder muscle. However, Dr. Mininberg gave a 51% disability rating to the right upper extremity, referencing the shoulder, while Dr. Neviaser offered a 15% disability rating to the right arm.

pain, his right shoulder sometimes "quit[s] working."

■ The hearing examiner did not explicitly consider all of the evidence in the record supporting petitioner's request for non-schedule benefits for his shoulder disability, and failed to explain the decision to deny the request. The Director affirmed the decision, noting only the portions of the record cited by the hearing examiner which referenced the treating physician's report. Although we have stated that a treating physician's opinion is due special weight, and may not be rejected without a reasonable explanation, *see Canlas v. District of Columbia Dep't of Employment Servs.*, 723 A.2d 1210, 1211–12 (D.C.1999); *Velasquez v. District of Columbia Dep't of Employment Servs.*, 723 A.2d 401, 405 (D.C.1999), even a treating physician's opinion cannot be exclusively relied upon, without explanation, where there are conflicting reports by other physicians and, indeed, in this case, conflicting statements in the treating physician's own earlier medical reports. Therefore, we vacate the Director's decision affirming the compensation order and remand for further findings of fact on the question whether petitioner suffered a disability to his shoulder. *See George Hyman Constr. Co., supra*, 498 A.2d at 566 (outlining director's duty to ensure that hearing examiner's conclusion is supported by substantial evidence in the record as a whole). Should the agency make a factual finding that petitioner suffered a shoulder disability, petitioner may obtain both schedule and non-schedule benefits upon proof that his "separate and distinguishable" shoulder disability led to wage loss. *See WMATA, supra*, 683 A.2d at 474 n. 4.

Accordingly, the decision of the Director is vacated, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*