HOWARD UNIVERSITY HOSPITAL/PROPERTY & CASUALTY GUARANTEE FUND, Petitioners,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,

Tommie Ambrose, Intervenor.

No. 06–AA–356.

District of Columbia Court of Appeals.

Argued Nov. 28, 2007.

Decided May 8, 2008.

William H. Schladt, Rockville, MD, for petitioners.

Pastell Vann, Senior Assistant Attorney General, with whom Linda Singer, Acting Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Edward E. Schwab, Deputy Solicitor General, were on the brief, for respondent.

Allen J. Lowe for intervenor.

Before RUIZ and FISHER, Associate Judges, and SCHWELB, Senior Judge.

SCHWELB, Senior Judge:

Howard University Hospital (the employer) has asked this court to review a decision of the Compensation Review Board (CRB) of the District of Columbia Department of Employment Services (D.C.DOES). In that decision, the CRB affirmed a Compensation Order in which a D.C. DOES Administrative Law Judge (ALJ) held that the claimant, Tommie Ambrose, who had been injured while working for the employer, was entitled to concurrent benefits for permanent total disability (based on the condition of his left hip) and for permanent partial disability (in relation to the condition of his right knee). The injuries were suffered as a result of the same work-related accident.

The employer claims that the CRB erred in holding that Ambrose is totally disabled. In the alternative, the employer asserts that even if Ambrose is totally disabled, he is not entitled to concurrent benefits for permanent total disability and for permanent partial disability. We conclude that Ambrose is entitled to permanent total disability benefits. Although we entertain considerable doubt that he is also entitled to receive partial disability benefits, we remand the case to the CRB with directions to reconsider that issue in the light of the authorities cited in this opinion.

## I.

## BACKGROUND

From 1981 to 1997, Ambrose was employed by Howard University Hospital as a security guard and special police officer. On February 17, 1997, while on duty, Ambrose fell while pursuing a suspect. Ambrose suffered injuries, *inter alia*, to his right knee.

On October 26, 2000, Ambrose underwent an "arthroscopic debridement" of his right knee. Ambrose claims, and the ALJ found, that the injury to the knee caused Ambrose to place greater weight on his left hip than on his right hip. The unequal distribution of weight aggravated a preexisting arthritic condition in Ambrose's left hip, with the result that on October 25, 2002, Ambrose underwent total hip replacement surgery. On the basis of the expert testimony of one of Ambrose's treating physicians, the ALJ found, following an evidentiary hearing, that as a result of the condition of his now-replaced left hip, Ambrose is not able to return to the work force as a security guard or special police officer, although he is able to perform certain primarily sedentary tasks. The ALJ also found that Ambrose continues to experience pain, swelling, and occasional grating and locking sensations in his right knee, that the condition of Ambrose's left hip is causally related to his on-duty accident, and that Ambrose is permanently and totally disabled. The ALJ found that Ambrose has suffered a 25% permanent

partial disability to his "right lower extremity," and that Ambrose is entitled to a "schedule award"[1] based on that finding.

Turning to the question of whether Ambrose is entitled to concurrent awards for the "schedule" injury to his knee and the permanent total disability relating to his hip, the ALJ relied on the then newly-formed CRB's recent decision in *Sullivan v. Boatman & Magnani*, CRB No. 03–74, 2005 DC Wrk. Comp. LEXIS 184 (Aug. 31, 2005). The ALJ wrote that in *Sullivan*,

the CRB set forth a standard permitting a schedule disability award and a concurrent wage loss partial or total disability award only where the partial or total wage loss disability is based upon the wage loss being due to the anatomically non-schedule body part, and there is also a distinct, separable and identifiable functional impact upon the schedule body part sufficient to sustain an award. (Citation omitted.)

Applying the ruling in *Sullivan* to the facts before him, the ALJ concluded:

It is my reading of the new rule that Claimant's injuries meet the criteria and therefore he is entitled to both the permanency award and the wage loss award concurrently.

The employer appealed to the CRB from the Compensation Order and, in a brief "Decision and Order," the CRB affirmed. The CRB stated that "the ALJ's factual findings are supported by substantial evidence on the record as a whole, and are conclusive, and the ALJ's legal conclusions are in accordance with the law." The CRB added that

[ ] the record fully supports the ALJ's thorough, well reasoned decision and the Panel, therefore, adopts the reasoning and legal analysis expressed by the ALJ in that decision in affirming the Compensation Order in all respects.

The employer filed a timely petition for review.

## II.

## PERMANENT TOTAL DISABILITY

The employer contends that the "claimant is capable of working and is therefore not entitled to permanent total disability." According to the employer, "[it] has met its burden of demonstrating job availability and the claimant has voluntarily limited his income under the Act." The employer also asserts that although disability is an economic concept and not a medical concept, "this does not mean that if the economy is bad, and the claimant cannot get a job, he is entitled to benefits." Neither of these contentions is persuasive.

With respect to the employer's assertion that Ambrose unreasonably limited his job search and thus his income, the ALJ found as follows:

---

1. In *Morrison v. District of Columbia Dep't of Employment Servs.*, 736 A.2d 223 (D.C.1999), this court explained the difference between "schedule" and "non-schedule" injuries.

The statute that provides for payments for permanent partial disabilities divides such disabilities into two categories: "schedule" and "non-schedule." D.C.Code § 36–308(3)(A)–(M) lists certain parts of the body which, if permanently disabled, entitle the worker to disability payments equal to the number of weeks' compensation listed for that body part in the schedule. D.C.Code § 36–308(V) provides a formula for compensating disabilities that are not expressly set out in the schedule, measured in terms of actual wages lost as a result of the disability. A worker who suffers a schedule disability, *i.e.*, one for which the statute provides a fixed payment in terms of weeks of compensation, may not opt to recover actual lost wages in lieu of the fixed amount available for such a disability.

*Id.* at 225 (citations omitted); *see also Muhammad v. District of Columbia Dep't of Employment Servs.*, 774 A.2d 1107, 1109 n. 1 (D.C.2001).

On the issues of voluntary limitation of income and failure to cooperate, I find that Employer has not carried its burden on either. The record evidence is such that Claimant has pursued all job leads presented to him by the vocational counselor engaged by Employer and also has pursued jobs leads on his own. The evidence is that for all job leads identified by the vocational counselor, Claimant has submitted an application and in certain instances also sat for an interview. In addition, the vocational counselor testified that Claimant participated in all recommended job training and that he was prepared to continue to assist Claimant but that Employer had terminated his services, not based on any negative report of Claimant not cooperating but rather because Employer stated that Claimant intended to pursue his own job leads.

Although the employer's position is not altogether without support on the record,[2] the ALJ's findings on this issue are supported by substantial evidence, and the employer has not persuaded us that we may or should second-guess an evidentiary determination by the trier of fact, who heard the evidence first-hand.

■■■ The ALJ and the CRB ruled, and we agree, that the possibility that jobs exist involving types of work in which Ambrose is inexperienced and unqualified does not preclude a finding of total disability. In *Washington Post v. District of Columbia Dep't of Employment Servs.*, 675 A.2d 37 (D.C.1996), we explained that

[a] claimant suffers from total disability if his injury prevents him from engaging in the only type of gainful employment for which he is qualified. [*American Mut. Ins. Co. of Boston v. Jones*, 138 U.S.App. D.C. 269, 272, 426 F.2d 1263, 1266 (1970)]; *see also Abex Corp. v. Brinkley*, 252 A.2d 552, 553 (Del.Super.1969). Total disability does not mean absolute helplessness, *Sherwood v. Gooch Milling & Elevator Co.*, 235 Neb. 26, 453 N.W.2d 461, 467 (Neb. 1990), and the claimant need not show that he is no longer able to do any work at all. *Gulf Ins. Co. v. Gibbs*, 534 S.W.2d 720, 724 (Tex.Civ.App.1976). In the words of the leading treatise,

evidence that claimant has been able to earn occasional wages or perform certain kinds of gainful work does not necessarily rule out a finding of total disability nor require that it be reduced to partial. . . . The rule followed by most modern courts has been well summarized by Justice Matson of Minnesota Supreme Court in the following language:

An employee who is so injured that he can perform no services other than

---

2. A physician who examined Ambrose on behalf of the employer was of the opinion that Ambrose was physically capable of returning to work full-time, so long as he was not required to do excessive lifting or repetitive bending. The ALJ, however, credited the evaluation of the claimant by Richard E. Grant, M.D., who expressed his "complete disagreement" with the conclusion that Ambrose was fit to return to duty. Dr. Grant was of the opinion that Mr. Ambrose "is, at best, able to return to a sedentary position that does not involve apprehension of criminals [or] running." In Dr. Grant's opinion, the claimant would be limited "from this

point on, for the rest of his life" to a "principally sedentary position."

Because the claimant made a *prima facie* showing that he could no longer perform the duties of a security guard and special police officer, "the burden shift[ed] to the employer to establish the availability of jobs that the claimant could perform." *New Orleans Gulfwide Stevedores v. Turner*, 661 F.2d 1031, 1038 (5th Cir.1981) (citations omitted). The ALJ's finding that the employer failed to satisfy its burden is supported by the record; there was no proof that Ambrose failed to pursue leads for sedentary jobs.

those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled.

2 ARTHUR LARSON, WORKMEN'S COMPENSATION LAW, § 57.51(a), at 10–283 to 10–288 (1995) (quoting *Lee v. Minneapolis St. Ry. Co.*, 230 Minn. 315, 41 N.W.2d 433, 436 (Minn.1950)).

*Id.* at 41. The ALJ accurately cited the *Washington Post* decision for the proposition that "a claimant suffers from total disability if his injury prevents him from engaging in the only type of gainful employment for which he is qualified," and he found that Ambrose's disability satisfies that definition. We discern no error.

■■■ We are also unable to agree with the employer's apparent contention that if a disabled employee is prevented by a weak economy from finding work for which he or she is qualified, the burden of the unfavorable economic conditions falls on the employee and precludes recovery of workers' compensation. As we stated in *Washington Post*, 675 A.2d at 41, "disability is an economic concept, [and] its existence depends on *the realities of the market place.*" (Emphasis added.) Moreover, "[w]orkers' compensation statutes should be liberally construed to achieve their humanitarian purpose," *Vieira v. District of Columbia Dep't of Employment Servs.*, 721 A.2d 579, 584 (D.C.1988) (citations omitted), and the employer's position cannot be reconciled with the generous construction which we have consistently accorded to the Act.

## III.

### CONCURRENT AWARDS

A. *Standard of review*

■■■ The employer claims that the CRB erred in holding that Ambrose is entitled to receive, concurrently, permanent total disability benefits for the injury to his left hip and permanent partial disability benefits for the injury to his right knee. This contention requires us to construe our workers' compensation statute, and it therefore raises a question of law. Our review of the CRB's legal rulings is *de novo*, for "it is emphatically the province and duty of the judicial department to say what the law is." *Washington Post*, 675 A.2d at 40 (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803)). As the Supreme Court reiterated in *Chevron U.S.A., Inc. v. Natural Res. Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the judiciary is the final authority on issues of statutory construction. *Id.* at 843 n. 9, 104 S.Ct. 2778. But

[r]ecognizing agency expertise, ... we "accord [ ] great weight to any reasonable construction of [a] regulatory statute by [the] agency charged with its administration." *George Hyman*, 497 A.2d at 108; *see also Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616, (1965). Indeed, we will defer to any agency's interpretation of a statute that it administers "so long as it is not plainly wrong or inconsistent with the legislature's intent." *Red Star Express*, 606 A.2d at 163 (citation omitted); *see also Totz v. District of Columbia Rental Accommodations Comm'n*, 412 A.2d 44, 46 (D.C.1980) (per curiam).

*UPS v. District of Columbia Dep't of Employment Servs.*, 834 A.2d 868, 871 (D.C. 2003). "[W]e must sustain the agency's interpretation even if a petitioner advances another reasonable interpretation of the statute or if we might have been persuaded by the alternate interpretation had we been construing the statute in the first

instance." *Smith v. District of Columbia Dep't of Employment Servs.*, 548 A.2d 95, 97 (D.C.1988) (citations omitted); *see Chevron,* 467 U.S. at 843, 104 S.Ct. 2778.

### B. Statutory background and "expressio unius" analysis

Our inquiry regarding the meaning of the workers' compensation statute must begin, as always, with its language. With respect to permanent total disability, the statute states:

> In case of total disability adjudged to be permanent, 66 2/3% of the employee's average weekly wages shall be paid to the employee during the continuance thereof. Loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any 2 thereof shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases permanent total disability shall be determined only if, as a result of the injury, the employee is unable to earn any wages in the same or other employment.

D.C.Code § 32–1508(1). Nothing in this provision states or implies that a claimant who is totally permanently disabled—the most severe condition addressed by our workers' compensation law—is entitled to any recovery beyond two thirds of his or her average weekly wage (AWW).

▆▆▆ The provision defining the compensation available to a claimant who has been permanently *partially* disabled, on the other hand, makes it clear that under certain specified circumstances, the payment of two thirds of the claimant's AWW is not exclusive:

> In case of disability partial in character but permanent in quality, the compensation shall be 66 2/3% of the employee's average weekly wages *which shall be in addition to compensation for temporary total disability or temporary partial disability paid in accordance with paragraph (2) or [ (5)] of this subsection respectively.*

D.C.Code § 32–1508(3) (emphasis added). The paragraphs to which the italicized provisions refer deal with temporary total disability benefits and temporary partial disability benefits. D.C.Code § 32–1508(2), (5). In other words, the claimant may be entitled to compensation for permanent partial disability concurrently with benefits for. *temporary* disability, whether total or partial,[3] but there is no comparable provision for *permanent* total disability. *Expressio unius est exclusio alterius.*[4] "Where a statute, with reference to one subject, contains a given provision, the omission of such [a] provision from a similar statute concerning a related subject ... is significant to show [that] a different intention existed." *Smith,* 548 A.2d at 100 n. 13.

In *Korineck v. General Dynamics Corp.,* 835 F.2d 42 (2d Cir.1987), the court applied the foregoing principles to the corresponding provisions of the federal statutory scheme, as follows:

> Korineck argues essentially that even though his back injury alone is a total and permanent disability for which he

---

**3.** A "schedule award" for the loss of a body part listed in the statute is considered a permanent partial disability. *See* D.C.Code § 32–1503.3 (2001); note 1, *supra.*

**4.** [W]hen a legislature makes express mention of one thing, the exclusion of others is implied, "because there is an inference that all omissions should be understood as exclu-

sions." *McCray v. McGee,* 504 A.2d 1128, 1130 (D.C.1986) (citations and internal quotation marks omitted). "Loosely translated [the *expressio unius* ] maxim means here that the legislative expression of one remedy implies the intent to exclude others." *Mack v. United States,* 637 A.2d 430, 433 n. 6 (D.C.1994).

receives benefits, he is entitled to additional benefits for disability beyond a total and permanent disability.

\* \* \*

That Congress provided a schedule prescribing benefits for certain disabilities does not justify a conclusion that a claimant becomes entitled to those benefits if already receiving compensation for total permanent disability. The schedule sets a presumptive loss of earning power for specific defined injuries, thus freeing the injured worker from the inconvenience of having to litigate and prove a loss of earning power each time he or she is injured. *See Potomac Elec. Power Co. v. Director of Workers' Compensation Programs,* 449 U.S. 268, 281–82, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980) (hereinafter *PEPCO* ) (discussing the basic compromise inherent in workers' compensation statutes). The statute does not mandate that this predetermined amount must be paid when the claimant is already compensated for a total permanent disability. Indeed, the statute suggests the contrary where it indicates in 33 U.S.C. § 908(c) that the amount to be paid "shall be in addition to compensation for temporary total disability or temporary partial disability."

*Id.* at 43–44; *see also State ex rel. Murray v. Industrial Comm'n of Ohio,* 63 Ohio St.3d 473, 588 N.E.2d 855, 857 (1992) (concurrent benefits for permanent total disability and temporary total disability denied because applicable Ohio statute specified "that compensation for partial disability ... shall be in addition to compensation for periods of temporary total disability. *Reference to concurrent pay-*

*ments of PPD and PTD benefits is conspicuously absent.")* (Emphasis added.)

■■■ "The maxim *expressio unius est exclusio alterius* is an aid to construction, not a rule of law." *Neuberger v. Comm'r,* 311 U.S. 83, 88, 61 S.Ct. 97, 85 L.Ed. 58 (1940). It should be applied with caution, *Eastern Sav. Bank v. Pappas,* 829 A.2d 953, 962 (D.C.2003), and it does not necessarily decide this case. Nevertheless, on remand, the CRB should give due consideration to *expressio unius* and to the authorities applying this principle to cases comparable to this one.

## C. The applicable case law

As counsel for the claimant acknowledges in his post-argument submission,[5] the courts of "a majority of jurisdictions do not permit concurrent awards." Nevertheless, the authorities are not unanimous, and we summarize the case law below.

■■■■ "Disability is an economic and not a medical concept," and "conversely, a continuing injury that does not result in any loss of wage earning capacity cannot be the foundation for a finding of disability." *American Mut. Ins. Co.,* 138 U.S.App. D.C. at 271–72 & n. 9, 426 F.2d at 1265–66 & n. 9; *Washington Post,* 675 A.2d at 40–41. Professor Larson has explained that where concurrent injuries result from the same accident,

> [t]he normal rule is that, *since a person can be no more than totally disabled at a given point,* he or she cannot be awarded both total permanent and permanent partial benefits for the same injurious episode, nor can that person be awarded a cumulation of partial benefits whose sum total is greater than the benefits for permanent total [disability].

5. Following oral argument, the court directed counsel to file supplemental submissions addressing, *inter alia,* authorities from other jurisdictions with respect to the permissibility *vel non* of concurrent awards.

A. Larson, Larson's Workers' Compensation Law § 92.01[2] (2000) (emphasis added). "The basic purpose of workers' compensation is to compensate diminished ability to compete in the labor market, ... rather than to compensate every injury." *Mercier v. Workers' Comp. Appeals Bd.,* 16 Cal.3d 711, 129 Cal.Rptr. 161, 548 P.2d 361, 364 (1976) (statutory citation omitted). As the Supreme Court of Kentucky explained in *Osborne Mining Corp. v. Blackburn,* 397 S.W.2d 144 (1965),

> [i]t is conceivable that a claimant may have a combination of injuries or an injury and occupational disease, any one of which would entitle him to maximum benefits, *but no injury or occupational disease or combination thereof simultaneously causing disability will entitle him to more than the maximum benefits under KRS 342.095, because he has just the one total and permanent disability resulting.*

*Id.* at 145 (emphasis added).

In *Pacific Motor Trucking Co. v. Yeager,* 64 Or.App. 28, 666 P.2d 1366 (1983), the court, relying on an earlier edition of Professor Larson's work, held that a claimant is not entitled to receive simultaneous awards both for permanent total disability and for permanent partial disability. Noting that in Professor Larson's view, "the injured worker is not entitled to simultaneous payments for more than one disability award," *id.* at 1369, the court quoted from Larson's treatise as follows:

> There is both a theoretical and a practical reason for the holding that awards for successive or concurrent permanent injuries should not take the form of weekly payments higher than the weekly maxima for total disability. The theoretical reason is that, *at a given moment in time, a man can be no more than totally disabled.* The practical reason is

that if he is allowed to draw weekly benefits simultaneously from a permanent total and permanent partial award, it may be more profitable for him to be disabled than to be well—a situation which compensation law always studiously avoids in order to prevent inducement to malingering. 2 Larson, Workmen's Compensation Law, 10–507, § 59.41 (1981). (Footnotes omitted.)

*Id.* at 1369 (emphasis added); *see also Kehm v. Continental Grain,* 756 P.2d 381, 382 (Colo.Ct.App.1987) (quoting and adopting the passage from Larson relied upon by the court in *Pacific Motor Trucking ).* Accordingly,

> [i]t is entirely logical to maintain that an employee can be only 100 per cent incapacitated for work at any given time. And under the Commission's rating schedule *an employee cannot be more than 100 per cent permanently disabled, in any one accident.* Nor can he be more than 100 per cent permanently disabled by a series of accidents as measured by the commission's rating schedule when ratings are combined, even though if added they total over 100 per cent. *(Pacific Gas & Elec. Co. v. Ind. Acc. Com., supra,* 126 Cal.App.2d 554, 557, 272 P.2d 818.)

*State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.,* 70 Cal.App.3d 599, 139 Cal. Rptr. 41, 42 n. 1 (1977) (emphasis added) (citation omitted).

In *Rupert v. Todd Shipyards Corp.,* 239 F.2d 273 (9th Cir.1956), the plaintiff, Clarence Rupert, was performing services as a rigger on a steamship. Rupert fell sixteen feet to the deck, and he sustained injuries which totally and permanently disabled him. He also suffered serious facial disfigurement. Rupert filed a claim pursuant to the federal Longshoremen's and Harbor

Workers' Compensation Act (LHWCA),[6] and a Deputy Commissioner awarded him both benefits for permanent total disability and an additional sum to compensate him for his facial disfigurement. The United States District Court set aside the portion of the award that purported to compensate Rupert for disfigurement. In affirming and adopting the District Court's judgment, the Court of Appeals stated, in pertinent part, that

> the Longshoremen's and Harbor Workers' Compensation Act, as its name implies, is a compensation statute and invokes wage-compensation principles rather than tort principles.... As a compensation statute imposing upon the employer liability regardless of fault, the

Act should generally be interpreted as providing for an award intended to compensate for loss of earning capacity. *Any interpretation permitting an award of compensation for facial disfigurement to be super-imposed upon an award for 'permanent total disability' which presupposes a permanent loss of all earning capacity, would run counter to the manifest spirit and purpose of the enactment.*

*Id.* at 276–77 (emphasis added; citations omitted), *accord, Korineck,* 835 F.2d at 44 (quoting *Rupert* ).

The approach reflected in the foregoing authorities, however, is not unanimous. In *State ex rel. Latino v. Indus. Comm'n of*

---

**6.** Prior to the enactment of the District's workers' compensation statute, the LHWCA was the statutory basis for workers' compensation in this jurisdiction. *See Dunston v. District of Columbia Dep't of Employment Servs.,* 509 A.2d 109, 111 n. 2 (D.C.1986). We have accorded great weight to decisions of the United States Courts of Appeals construing the federal statute. *Id.; see also Washington Post,* 675 A.2d at 41 n. 3, *Logan v. District of Columbia Dep't of Employment Servs.,* 805 A.2d 237, 243 n. 2 (D.C.2002).

Ambrose contends that the District's workers' compensation statute differs from the LHWCA in a significant respect, and that decisions construing the LHWCA are not controlling. In that connection, we note that our statute provides, in pertinent part, as follows:

> Compensation for disability shall be paid to the employee as follows:
>
> (1) In case of total disability adjudged to be permanent, 66 2/3% of the employee's average weekly wages shall be paid to the employee during the continuance thereof. Loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any 2 thereof shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. *In all other cases permanent total disability shall be determined only if, a as result of the injury, the employee is unable to earn any wages in the same or other employment;*

D.C.Code § 32–1508(1) (emphasis added). The corresponding provision in the federal

statute is substantially identical, except that the last sentence reads as follows:

> *In all other cases permanent total disability shall be determined in accordance with the facts.*

33 U.S.C. § 908(a) (emphasis added).

The difference between the two statutes, however, appears to be of little significance, at least in the absence of a showing more persuasive than that which has been presented to us. Ambrose has cited no legislative history, and we have discovered none, suggesting that the different language in § 32–1508(1) was intended to achieve a substantive departure from the federal statute. Moreover, the LHWCA defines "disability," in pertinent part, as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U.S.C. § 902(10). Therefore, a claimant's inability to earn wages constitutes "total disability" under the federal statute regardless of his or her medical condition; earning capacity is the key. *Quick v. Martin,* 130 U.S.App. D.C. 83, 86, 397 F.2d 644, 647 (1968); *see also New Orleans Gulfwide Stevedores,* 661 F.2d at 1037–38. It thus appears, at least absent a persuasive contrary showing that under federal law, as under our statute, total disability turns on whether "the claimant is unable to earn any wages in the same or other employment." D.C.Code § 32–1508(1).

*Ohio,* 234 N.E.2d 912 (1968), the Supreme Court of Ohio held that the claimant was entitled to concurrent awards of total permanent disability for an occupational disease and permanent partial disability for a work-related injury. In so holding, the court expressly rejected, under the statutory scheme then in effect in Ohio, the proposition, since articulated by Professor Larson and reflected in the decisions which we have cited, that there can be no recovery beyond the statutory ceiling for permanent total disability. The court stated:

> The appellees argue that the basic purpose of the Workmen's Compensation Act is to provide compensation for the impairment of earning capacity of injured workers, and that a worker who is being compensated for a permanent and total disability is, in effect, being compensated for a total impairment of earning capacity, so that no further compensation under the Act is authorized. This argument is based on the truism that one's earning capacity cannot be more than totally impaired.
>
> The weakness in this argument is that *not all of the sections of our Workmen's Compensation Act are aimed exclusively at compensating for impairment of earning capacity.*

*Id.* at 914 (emphasis added). The court then gave an illustration of the language italicized above:

> In arriving at a percentage of disability the Commission is to consider the extent of physical disability, the impairment of earning capacity and the vocational handicap of the employee. While impairment of earning capacity is thus considered, it is nevertheless not the only criterion, and it may not even be a major one.

*Id.* at 915.

The Supreme Court of Ohio adhered to *Latino* in *State ex rel. Martin v. Indus.*

*Comm'n of Ohio,* 55 Ohio St.2d 18, 377 N.E.2d 1000, 1002 (1978) (per curiam), and the highest courts of at least two other states have reached similar results under the workers' compensation statutes of those jurisdictions. *See Buechler v. North Dakota Workmen's Comp. Bureau,* 222 N.W.2d 858, 861–62 (N.D.1974), *but cf.* opinion of Erickstad, C.J., *id.* at 863–64, dissenting; *Magness Constr. Co. v. Waller,* 269 A.2d 554, 555–56 (Del.1970).

The decisions discussed above reveal that the courts of a majority of jurisdictions appear to have adopted the approach favored by Professor Larson, but this approach is not unanimous. The result in any one case may turn on the particulars of the governing statute.

### D. *Administrative construction and judicial deference*

 As we have previously noted, we must accord great weight to any reasonable construction of a statute by the agency charged with its administration. *See, e.g., Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. "The deference which courts owe to agency interpretations of statutes which they administer is at its zenith where the administrative construction has been consistent and of long standing, [but] plummets substantially where these attributes are lacking." *Tenants of 738 Longfellow St. N.W. v. District of Columbia Rental Hous. Comm'n,* 575 A.2d 1205, 1213 (D.C. 1990); *UPS,* 834 A.2d at 871–72. The Supreme Court has recognized, as have we, that deference is therefore less appropriate where the agency's construction has been sporadic or uncertain. *INS v. Cardoza Fonseca,* 480 U.S. 421, 445–46 & n. 30, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Atwater v. District of Columbia Dep't of Consumer & Regulatory Affairs,* 566 A.2d 462, 468 (D.C.1989). With these principles

in mind, we turn to the administrative construction of the District's Workers' Compensation Act in relation to the issue presently before us.

The question whether a claimant is entitled to receive concurrent benefits for permanent total disability and permanent partial disability appears to have arisen infrequently in this jurisdiction, and it has not previously been addressed by this court. There is, however, some pertinent administrative precedent. In *Pope v. A.A. Beiro Concrete Co.,* Dir. Dkt. No. 91–27, H & AS No. 85–331 (Feb. 3, 1995), a decision by the Director of DOES, the claimant suffered a work-related back injury which rendered him permanently totally disabled. He also sustained neurological impairment of both legs which resulted in permanent partial disability. The leg is a "schedule" body part, while the back is not. The Director held that the claimant was entitled to concurrent benefits for permanent total disability for the injury to his back and to a schedule loss for the permanent partial disability relating to the neurological impairment of his legs. The Director rejected as "irrelevant" the federal case law, including *Rupert,* 239 F.2d 273, construing provisions of the LHCWA. According to the Director,

> the cases cited by the employer are applicable in the federal jurisdiction, where the statutory foundation is the loss of wage earning capacity. By contrast, the applicable principle [in the District] is based on the actual wages lost.

The Director did not identify any differences in language between the federal and District of Columbia statutes which would support the distinction that he sought to draw. See note 6, *supra.*

In 2005, the Compensation Review Board was established to provide administrative appellate review and disposition of claims under the District's Workers' Compensation Act, D.C.Code §§ 32–1501 *et seq.* (2005). The CRB now carries out administrative appellate functions which were previously the province of the Director. Early in its existence, the CRB was presented with the question "whether an injured employee who is adjudged permanently and totally disabled may also receive a concurrent award for a schedule disability." *Sullivan,* 2005 DC Wrk. Comp. LEXIS 184, cited *supra* at page 4. In *Sullivan,* the ALJ to whom the case was initially presented reluctantly followed the Director's decision in *Pope,* but he concluded, in a thoughtful opinion, that the Director had misapprehended the statutory scheme. After noting that the Act contained no provision authorizing the payment of temporary partial or temporary total disability benefits concurrently with permanent total disability benefits,[7] the ALJ wrote, *inter alia,* that

> the question becomes whether, as a matter of policy, the Act can nevertheless, in light of its purpose and the nature of the benefits available thereunder, be construed to authorize the concurrent payment of both a permanent partial disability schedule award and permanent total disability wage-loss benefits. A schedule award is intended to compensate for economic, not physical, impairment by providing advance payment for future wage loss anticipated to result from a work-related injury irrespective of any wage loss actually incurred. *Smith v. D.C. Dept. of Employment Services,* 548 A.2d at 100–102. *See also, Bradley v. WMATA,* H & AS No. 96–

---

7. The ALJ relied on an *"expressio unius"* analysis similar to that described on pages 173–74 of this opinion.

135B, OWC No. 249967 (March 12, 1999). "Thus, the fixed and arbitrary amount of compensation for a schedule loss represents a legislative determination that attempts to balance the seriousness of the injury with its likely effect on future earning potential." *Smith,* 548 A.2d at 101. However, where an injured employee is determined to be permanently and totally disabled, the question of the impact of the employee's injury upon future earnings potential has been conclusively resolved. Payment of a permanent partial disability schedule award in addition to permanent total disability benefits based on actual wage loss not only fails to further the intended purpose of providing schedule awards, the concurrent payment of both actually undermines the overriding purpose and intent of the Act—recognized by the Director in *Pope v. A.A. Beiro Concrete*—of providing compensation for actual wages lost.

On appeal to the CRB, a majority of the three-member panel that heard the *Sullivan* case was "so persuaded by the force of the detailed analysis in the Compensation Order as to be disinclined to follow *Pope.*" Nevertheless, in order to avoid what it perceived to be potential tension with our decision in *Morrison,* 736 A.2d at 223,[8] the CRB majority held that schedule disability benefits may be awarded concurrently with benefits for total permanent disability if the wage loss is "due to the anatomically non-schedule body part" and if there is also a distinct, separable and identifiable functional impact upon the schedule body part sufficient to sustain an award.... [9] No judicial authority involving permanent total disability was cited in support of this new standard, and our decision in *Morrison* does not constrain the CRB's resolution of the issue presently before us. See note 8, *supra.*

In light of the CRB's explicit rejection of the Director's analysis and decision in *Pope,* there is no consistent or long-standing administrative precedent in this jurisdiction. Further, neither the Director in *Pope,* nor the CRB in *Sullivan* and its progeny, came to grips with the *"expressio unius"* analysis suggested in *Korineck,* 835 F.2d at 43–44, in *Murray,* 588 N.E.2d at 857, and in the Compensation Order in *Sullivan;* or with the principle, aptly articulated by Professor Larson, that *"at a given moment, a man can be no more than totally disabled."* 2 LARSON, WORKMEN'S COMPENSATION LAW, § 59.41 (1981) (quoted *in Pacific Motor Trucking,* 666 P.2d at 1369) (emphasis added); or with the authorities to the contrary, *e.g., Latino,* 234 N.E.2d at 914–15. "We have ... generally declined to defer to the administrative construction of a statute where the agency has failed to construe the [purportedly] ambiguous terms of that statute or *to*

---

8. We held in *Morrison* that "when a petitioner suffers multiple disabilities from a single injury, that petitioner is entitled to both schedule and non-schedule benefits, subject to proof that the non-schedule disability led to wage loss." 736 A.2d at 226. The question in *Morrison,* however, was whether a claimant was entitled to receive, concurrently, two different types of *partial* benefits for temporary disability ("schedule" awards pursuant to § 32–1508(3)(A)–(U) and non-schedule compensation pursuant to § 32–1508(3)(V)). The case did not involve benefits for permanent total disability at all. Thus, *"expressio unius"*

analysis was not called for, and the pros and cons of Professor Larson's view that a claimant cannot be more than permanently totally disabled at any point in time and therefore cannot be entitled concurrently to benefits for permanent total disability and permanent partial disability, have no application to the *Morrison* case.

9. The CRB subsequently adhered to *Sullivan* in *Jones v. Potomac Job Corps.*, CRB Nos. 06–40, 05–25, OHA No. 98–192B, OWC No. 269942 (2006), and in the present case.

*identify the question of construction being addressed.*" *Council of the District of Columbia v. Clay,* 683 A.2d 1385, 1389 (D.C. 1996) (emphasis added; citations omitted). Similarly, we should not defer to the CRB's construction when the Board has not included in its calculus either the *expressio unius* doctrine or the analogous authorities from other jurisdictions, several of them based on Professor Larson's analysis. Instead, we remand the issue to the CRB for reconsideration in light, *inter alia,* of the authorities cited herein.

## IV.

### CONCLUSION

For the foregoing reasons, the decision of the CRB is affirmed in part and vacated in part. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*